Matthew S. Warren (State Bar No. 230565)
Erika H. Warren (State Bar No. 295570)
Madeline A. Woodall (State Bar No. 351664)
2025-02-20@cases.warrenlex.com
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

*Attorneys for Applicant HMD Global Oy*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: *EX PARTE* APPLICATION OF HMD GLOBAL OY FOR AN ORDER UNDER 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | Case No. _____<br><br>**DECLARATION OF ANDREAS VON FALCK IN SUPPORT OF** ***EX PARTE*** **APPLICATION OF HMD GLOBAL OY FOR AN ORDER UNDER 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS** |

I, Andreas von Falck, with my professional address at Dreischeibenhaus 1, 40211 Düsseldorf, Germany declare under 28 U.S.C. § 1746 as follows:

**Personal Background:**

1.  I am a *Rechtsanwalt* (German lawyer) as well as a *Registered Representative before the Unified Patent Court*, and a Partner at Hogan Lovells International LLP. I studied law between 1988 and 1992 at the universities of Tübingen, Germany; Geneva, Switzerland; and Freiburg, Germany. I graduated from Freiburg University in 1993 (*1. Staatsexamen,* "first state exam"). Between 1993 and 1995 I was a legal trainee (*Rechtsreferendar*) at the Court of Appeal, Düsseldorf, Germany. As part of my traineeship I clerked with the Patent Division of the Düsseldorf District Court (*Landgericht Düsseldorf*) under Peter Meier-Beck who later became the presiding Judge of the Patent Senate of the German Federal Court of Justice (retired in 2019). In May 1995 I was admitted to the practice of law in Germany at the District Court of Düsseldorf. I hold a PhD in law from the University of Freiburg (1997) with a thesis on international civil procedural law.

2.  I have been involved in patent infringement and validity proceedings since I started practicing law and have handled matters in all fields of technology and science, with a particular focus on matters in the fields of telecommunication and life sciences. My contribution to the field is recognized by various first tier rankings for patent litigation in Chambers (Germany, Europe and Global), Legal 500 and other directories. I am the Editor in Chief of the Chambers Global Patent Litigation Guide and have published extensively in the field, more recently in the *Festschrift* for Peter Meier-Beck, in the *Oxford Press* Commentary on the UPC, the *Festschrift* for 80 Years of the Dusseldorf Court of Appeal,

- 2 -

as well as in the *Festschrift* for Thomas Kühnen, the recently retired presiding Judge at the Dusseldorf Court of Appeal's Patent Senate.

3.  I have experience as a German lawyer with proceedings under 28 USC Sec. 1782 for discovery in support of foreign proceedings.

4.  I have been instructed by Warren Kash Warren LLP to make this statement on behalf of HMD Global Oy (hereinafter: "HMD"). I am authorized to make this statement and any and all observations in this statement are based on my own experience and observations unless explicitly stated otherwise.

### A.
### The German patent infringement proceedings initiated by Huawei against HMD

5.  On November 3, 2022, Huawei Technologies Co. Ltd (hereinafter "Huawei") filed three patent infringement lawsuits against HMD Global Oy in the Munich District Court (*Landgericht München*, the "Complaints"). The Complaints have docket numbers

| |
|---|
| 21 O 13091/22 (matter I, European Patent 3 573 392 B1 = EP 392), |
| 21 O 13092/22 (matter II, European Patent 2 528 366 B1 = EP 366) |
| 21 O 14266/22 (matter III, European Patent 3 407 519 B1 = EP 519). |

6.  The Complaints are being handled by the one of the three patent divisions in the Munich District Court, the 21st division under presiding Judge Dr. Georg Werner.

- 3 -

7. Two of the three Complaints (matters I and III, concerning the EP392 and EP519 patents) were dismissed at first instance by judgements dated 20 September 2024 (EP519) and 2 October 2024 (EP392) for non-infringement. Huawei has appealed against these two decisions and the appeals are pending. The docket numbers at the Appeal Court are

| 6 U 3537/24 Kart e (matter I) and |
| 6 U 3511/24 Kart e (matter III). |

8. Although the matter is before a court of appeal, new evidence can be presented and will be taken into account by the court of appeal, especially if it is evidence that was not previously available at first instance. The prerequisite is that this evidence fall into one or more of these categories:

1) concerns an aspect that was clearly overlooked or deemed irrelevant by the court of first instance,
2) was not asserted due to a procedural defect at first instance, or
3) was not asserted at first instance without this being due to negligence on the part of the party.

As far as alternative 3 is concerned, a party acts negligently if it fails to adduce factual circumstances whose relevance to the proceedings it is aware of or ought to have been aware of had it taken due care, and which it would have been able to adduce at first instance. However, in this context, there is no obligation at first instance to investigate

y

- 4 -

unknown facts. Hence, If the party was not aware of the evidence in question at first instance, said evidence can be introduced at the appeal stage and considered by the court of appeal if the party obtains the relevant evidence during the appeal proceedings.

9. The third case (matter II) is still pending at first instance.

10. In matter II, the EP 366 proceedings, Huawei takes the position that the Patent-in-Suit is essential for the 4G standard (from Release 8) and argues that HMD infringes the Patent-in-Suit by selling mobile devices that are **4G-capable**.

11. In matter I, the EP 392 proceedings and matter III, the EP 519 proceedings, Huawei takes the position that the respective Patents-in-Suit are essential for the 5G standard (from Release 15) and believes that HMD infringes the Patents-in-Suit by selling mobile devices that are **5G-capable**.

12. Because infringement and validity are handled by different courts in Germany, HMD has filed nullity actions in the Federal Patent Court against all three Patents-in-Suit, and the docket numbers for these parallel nullity proceedings are as follows:

| Patent in suit | First instance nullity proceedings (Federal Patent Court) |
| --- | --- |
| EP 2 528 366 B1 | 4 Ni 23/23 |
| EP 3 573 392 B1 | 4 Ni 27/23 |
| EP 3 407 519 B1 | 4 Ni 16/23 |

- 5 -

## B.

## HMD's Non-Technical Defenses in Relation to Huawei's Licenses to Samsung

13. Against all three patents asserted by Huawei, HMD asserts both technical defenses relating to non-infringement and nullity, and non-technical defenses relating to other matters.

14. As part of its non-technical defenses, HMD asserts a FRAND defense. Huawei's relationship with Samsung plays a central role in that defense.

15. HMD's FRAND defense will be assessed according to the factors developed by the European Court of Justice in the landmark decision Huawei v. ZTE. This decision imposes certain obligations on the SEP holder, which he must fulfill in order to ensure that the judicial enforcement of the claims for injunction, recall and destruction does not constitute a prohibited abuse of a dominant position under Article 102 TFEU (Treaty on the Functioning of the European Union). The main obligation of the SEP holder is to offer to the implementer a license on FRAND terms, i.e. to make a so-called "FRAND offer". The FRAND offer must be Fair, Reasonable And Non-Discriminatory, and thus FRAND.

16. HMD's FRAND defense is based in part on the argument that Huawei did not comply with its main obligation to provide a FRAND offer as the license conditions offered to HMD are significantly less favorable than the license conditions agreed with other licensees, in particular Samsung. In the absence of any apparent justification, this would constitute discrimination against HMD and thus violate the central "ND part" (i.e. the prohibition of discrimination) of Huawei's FRAND obligations.

- 6 -

17. A successful FRAND defense against Huawei's actions would lead to a dismissal of at least Huawei's claims for injunctive relief, recall and destruction.

## C.
## HMD's Attempts to Obtain Huawei's License Agreements

18. In line with case law not only issued by German courts but also by – for example – the U.K. High Court, HMD's position is that the license agreements Huawei has concluded with other licensees – and in particular the license agreements Huawei has concluded with HMD's competitors on the relevant product market (i.e. the license agreements with other smartphone manufacturers) – establish the primary benchmark to determine FRAND license conditions. In particular, HMD's position is that the non-discrimination aspect of the FRAND-principles can only be assessed by way of looking at the license conditions Huawei has agreed with HMD's competitors.

19. Accordingly, HMD had already asked Huawei to disclose the existing agreements with other licensees at the beginning of the license negotiations – in early 2019, i.e. long before the above-mentioned infringement claims were filed – in order to determine FRAND license conditions and to negotiate a FRAND license agreement with Huawei. HMD has repeatedly addressed this issue over the years, but Huawei has largely rejected disclosure.

20. Although it is known from public sources – and was never denied by Huawei in the aforementioned German infringement proceedings – that Huawei has concluded license

- 7 -

agreements with several competitors of HMD such as Apple, Samsung, Xiaomi, Oppo or Vivo, Huawei so far merely disclosed certain "cherry picked" license agreements, concluded with parties which can not be considered competitors of HMD on the relevant product market.

21. To produce said "cherry picked" license agreements, Huawei filed an application for a production order against itself (directed at the disclosure of "cherry picked" agreements Huawei had concluded with other parties) in the EP 366 proceedings. This request by Huawei against itself was also based on Section 142 German Civil Code Of Procedure.

22. This request finds its legal basis in Section 142 German Civil Code Of Procedure, paragraph 1 of which reads:

> **Section 142**
>
> **Order to produce records or documents**
>
> *(1) The court may direct one of the parties or a third party to produce records or documents, as well as any other material, that are in its possession and to which one of the parties has made reference. The court may set a deadline in this regard and may direct that the material so produced remain with the court registry for a period to be determined by the court.*

23. "May" in this context means that the issuance of a production order is at the discretion of the court. The court can decide on a corresponding request by order.

- 8 -

24. The Munich District Court exercised its discretion in this context to grant Huawei's "request against itself" and issued a corresponding production order concerning the aforementioned "cherry picked" license agreements.

25. HMD has tried to obtain further agreements from Huawei in the same way, however without success.

26. With its non-technical rejoinder briefs in the aforementioned infringement proceedings (filed on 6 November 2023 in the EP 366 proceedings, on 22 November 2023 in the EP 392 proceedings and on 29 November 2023 in the EP 519 proceedings) HMD applied for a production order requiring Huawei to disclose all agreements concluded with Qualcomm. HMD sought agreements with Qualcomm because they are relevant not only to the aforementioned FRAND defense but also to an exhaustion defense, because Qualcomm is HMD's chipset supplier.

27. HMD's requests for Huawei's agreements with Qualcomm were not granted. The court has not given a reason for this. In light of this ruling, it is not possible for HMD to obtain further agreements concluded by Huawei based on Section 142 German Civil Code Of Procedure.

28. German procedural law does not provide for any further discovery options.

29. Accordingly, the content of the agreement(s) between Huawei and Samsung is still unknown to HMD and also to the Munich District Court and the Munich Higher Regional Court (*Oberlandesgericht München*). As a result, the current situation does not allow a

- 9 -

conclusive assessment of the central question of whether the license conditions that Huawei offers to HMD discriminate against other licensees (and competitors of HMD) and are therefore unFRAND which could ultimately lead to a valid FRAND defense in the pending infringement proceedings.

30. In particular, the "cherry picked" agreements do not allow for said conclusive assessment as the – primarily relevant – license agreements Huawei has concluded with HMD's main competitors were not amongst said "cherry picked" agreements. Any specific information on the "cherry picked" agreements that was made available in context of the infringement proceedings so far are the subject of a court confidentiality order, which prohibits the use of the documents/information outside the infringement proceedings and threatens a fine of up to EUR 100,000 or imprisonment for up to six months for each culpable breach of the confidentiality obligation.

31. To date, Huawei has persistently refused to make any further disclosures. In fact, during the oral arguments in the infringement proceedings mentioned above, Huawei's German counsel pointed out that HMD could obtain agreements by filing a request under U.S.C. § 1782.

32. If HMD were to introduce the agreement(s) with Samsung into the proceedings, based on my years of experience, I am confident that the court would take them into account and consider said agreements as evidence to decide on the FRAND defense. In my experience, in actions where the 1782 action has yielded documents and a party has

- 10 -

submitted those documents to the German Court, the German Court has considered the documents in making its decision.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 19, 2025, in Düsseldorf, Germany.

_____
Andreas von Falck